U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

JUN 19 2007

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY
SHREVEPORT

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| SAUNDERS LEE KING, JR. | CIVIL ACTION NO. 06-1201 |
| VERSUS | JUDGE DONALD E. WALTER |
| CITY OF BOSSIER CITY, ET AL. | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion for Partial Summary Judgment [Doc. #22] filed on behalf of defendants, the City of Bossier City, Chasen D. Swan, Darren Barclay, Michael Halphen and St. Paul Fire and Marine Insurance Company, pursuant to Federal Rule of Civil Procedure 56. Plaintiff opposes this motion. For the reasons assigned herein, defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to

interrogatories, admissions, and/or affidavits which it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309 (5th Cir. 1999). The moving party is not required to negate the elements of the non-moving party's case. Lawrence, 163 F.3d at 311.

Once the moving party carries its initial burden, the burden then falls upon the non-moving party to demonstrate the existence of a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 584-88, 106 S.Ct. 1348, 1355-56 (1986). The non-moving party "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1047 (5th Cir. 1996) (citations omitted). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). In the absence of any proof, the court will not assume the non-moving party could or would prove the necessary facts. Id.

## LAW AND ANALYSIS

### I. §1983 Claims Against Officers Barclay and Swan and Qualified Immunity.

Plaintiff brings §1983 claims against defendants Barclay and Swan in their individual and official capacities alleging excessive force, false arrest, failure to provide Miranda warnings and inadequate medical care. In their motion, defendants assert they are entitled to qualified immunity on all §1983 claims except excessive force.

The determination of immunity is a threshold question that must be resolved inasmuch as it determines a defendant's immunity from suit rather than immunity from damages. Brewer v.

Wilkinson, 3 F.3d 816 (5th Cir. 1993). The court must use a two-step analysis to determine whether a defendant is entitled to qualified immunity: (1) has the plaintiff alleged the violation of a clearly established constitutional right; and (2) were the officer's actions objectively reasonable? See Williams v. Bramer, 180 F.3d 699, 702 (5th Cir. 1999).

First, the court must determine whether the plaintiff has alleged a deprivation of a constitutional right at all. Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). The court must then ask whether the right allegedly implicated was clearly established at the time of the events in question. Id. The Fifth Circuit has stated that "[i]f reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." Fraire v. City of Arlington, 957 F.2d 1268, 1273 (5th Cir. 1992).

The doctrine of qualified immunity shields public officials "performing discretionary functions 'from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" Fraire, 957 F.2d at 1273, quoting Anderson v. Creighton, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). The qualified immunity defense protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986).

A.   **False Arrest.**

To prevail on a §1983 false arrest/false imprisonment claim, King must show that defendants did not have probable cause to arrest him. Haggerty v. Texas Southern University, 391 F.3d 653, 655 (5th Cir. 2004). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." Glenn v. City of Tyler, 242

F.3d 307, 313 (5th Cir. 2001). Thus, Barclay and Swan are entitled to qualified immunity if reasonable officers in their positions could have believed that, in light of the totality of the circumstances of which they were aware, there was a fair probability that King had committed or was committing an offense. See Haggerty, 391 F.3d at 655-656.

Similarly, whether plaintiff's state law false arrest claim can survive summary judgment depends on whether defendants have provided this Court evidence sufficient to establish probable cause. See Harrison v. State, 721 So.2d 458, 461 (La. 1998); see also La. C.Cr.P. 213.

This Court finds that genuine issues of material fact exist as to whether the officers had probable cause to arrest King. Accordingly, defendants' motion as it pertains to plaintiff's §1983 and state law false arrest claims, and any other related state law claims, is **DENIED**.

### B. Failure to Provide Miranda Warnings.

King asserts that after he was arrested, officers failed to provide Miranda warnings. Defendants do not concede such a failure, but rather assert that the underlying claim has no merit. This Court agrees.

The "prophylactic" guidelines established in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were designed to safeguard the right against self-incrimination. 384 U.S. at 444, 86 S.Ct., at 1612. The Supreme Court has recognized that these procedural safeguards are not themselves rights protected by the Constitution, but are instead measures to insure that the right against compulsory self-incrimination is protected. See Michigan v. Tucker, 417 U.S. 433, 444, 94 S.Ct. 2357, 2364, 41 L.Ed.2d 182 (1974), citing Miranda, 384 U.S. at 467, 86 S.Ct., at 1624.

The Supreme Court has held that §1983 plaintiffs do not have a Fifth Amendment claim against law-enforcement officials who have elicited unlawful confessions if those confessions are

not then introduced against the plaintiffs in criminal proceedings. See Chavez v. Martinez, 538 U.S. 760, 123 S.Ct. 1994, 155 L.Ed.2d 984 (2003) (plurality opinion); see also Murray v. Earle 405 F.3d 278, 285 n. 11 (5th Cir. 2005). See also Renda v. King, 347 F.3d 550, 552 (3d Cir. 2003) ("a plaintiff may not base a §1983 claim on the mere fact that the police questioned her in custody without providing Miranda warnings when there is no claim that the plaintiff's answers were used against her at trial."); Burrell v. Virginia, 395 F.3d 508, 513-14 (4th Cir. 2005) (the plaintiff's §1983 claim fails to state a claim as the plaintiff did not allege any trial action that violated his Fifth Amendment rights).

However, Chavez, supra, left open the possibility that a plaintiff could pursue a claim for violation of substantive due process in the event of genuine physical or mental coercion surrounding his confession:

> [A]ny argument for a damages remedy in this case must depend not on its Fifth Amendment feature but upon the particular charge of outrageous conduct by the police, extending from their initial encounter with Martinez through the questioning by Chavez. That claim, however, if it is to be recognized as a constitutional one that may be raised in an action under § 1983, must sound in substantive due process.

Chavez, 538 U.S. at 779-80, 123 S.Ct. 1994 (Souter, J., joined by Stevens, Kennedy, Ginsburg & Breyer, JJ.). Such a violation will be recognized, however, only where the specific conduct alleged rises to a level of coercive interrogation that "shocks the conscience." County of Sacramento v. Lewis, 523 U.S. 833, 847, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998).

There is no evidence before this Court that King's answers provided during the allegedly unwarned interrogation were used against him at trial. There is no indication that any statement made by King was coerced. See King Depo., p. 136 (admitting no abuse in interrogation).

Plaintiff has failed to allege a constitutional violation based on the officers' alleged failure

to provide Miranda warnings. Accordingly, defendants' are entitled to judgment as a matter of law as to this claim.

C.  **Inadequate Medical Care.**

Plaintiff asserts that "[t]he treatment, or lack thereof, by the [Bossier] EMT" for the serious injuries he received as a result of the altercation that took place when he was arrested "was woefully inadequate and insulting." Plaintiff's Opp., p. 21.[1]

"The constitutional rights of a pretrial detainee flow from the procedural and substantive due process guarantees of the Fourteenth Amendment . . . ." Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)); see also Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996). In evaluating the claim of a pretrial detainee, the court must first classify such claims as either an attack on a "condition of confinement" or as an "episodic act or omission." Olabisiomotosho, 185 F.3d at 526. The former category would include such claims as a detainee's complaints of "the number of bunks in a cell or his television or mail privileges" while the latter occurs "where the complained-of harm is a particular act or omission of one or more official." Id. (citations omitted). This Court finds that plaintiff's complaint regarding his inadequate medical treatment is clearly an "episodic act or omission" claim. See Hare, 74 F.3d at 643.

When the alleged unconstitutional conduct involves an episodic act or omission, as it does here, the question for the court is whether the state official acted with deliberate indifference to the

---

[1]Although not specifically addressed in plaintiff's opposition, to the extent plaintiff claims that he was provided inadequate medical care following the alleged multiple bursts of pepper spray he received immediately prior to his arrest, such claims are dismissed as plaintiff was allowed to rinse out his eyes which shows that defendants were not deliberately indifferent to King's medical needs.

inmate's constitutional rights. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); Gibbs v. Grimmette, 254 F.3d 545, 548 (5th Cir. 2001) (citing Hare, 74 at 645, 647). To prove deliberate indifference, a pretrial detainee must show that the state official knew of and disregarded an excessive risk to the inmate's heath or safety. Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999). "Deliberate indifference is more that mere negligence in failing to supply medical treatment." Gibbs, 254 F.3d at 549; Williams v. Treen, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983" (emphasis added)).

King was taken to the Bossier City Police Department after his arrest. Complaint, ¶36. While removing his personal items from his pockets at the police desk, King "nearly passed out, was told to lean against the wall, but fell down the wall onto the ground." Id. at ¶37.

In the case sub judice, it is undisputed that once plaintiff fell, the Bossier City Fire Department was contacted and two EMTs were dispatched. King's blood pressure was taken and the EMT's determined that no emergency medical care was needed. Horton Aff., ¶5, including attached Incident Report. Plaintiff asserts mere negligence on behalf of the Bossier City Jail staff for failing to treat his injuries. Even if defendants'[2] failure to treat King's injuries amounted to negligence or even malpractice, this is not sufficient to show deliberate indifference. See Stewart, 174 F.3d at 534. As plaintiff has failed to show a constitutional violation, defendants are entitled to qualified immunity as to plaintiff's inadequate medical care claim.

---

[2]The Court notes that the EMTs were not named as defendants in this matter. The Court further notes that plaintiff fails to show how the individually named defendants, Barclay, Swan and Halphen, were involved in King's medical treatment, or lack thereof. Despite this, the Court addresses the inadequate medical care claim in the context of qualified immunity out of caution.

II.   **Claims Against Chief Halphen.**

Section 1983 does not impose individual liability on a supervisor under theories of vicarious or respondeat superior liability. Kohler v. Englade, 470 F.3d 1104, 1114-15 (5th Cir. 2006); see also Coleman v. Houston Independent School District, 113 F.3d 528, 534 (5th Cir. 1997). The Fifth Circuit has stated that "[o]nly the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under §1983." Id. "[A] plaintiff must show either that the [Chief] was personally involved in the constitutional violation or that there is a sufficient causal connection between the [Chief's] conduct and the constitutional violation." Kohler, 470 F.3d at 1115.

There is no evidence before this Court that Chief Halphen was personally involved in the arrest of King. Further, King makes no allegation that Chief Halphen was personally involved in his arrest. Rather, King asserts that Chief Halphen is liable for his failure to "properly train, discipline or supervise officers . . . to prevent continual violations of constitutional rights" and his "failure to correct a police officer's known propensity for the improper use of force". Plaintiff's Opp., p. 29. Thus, Chief Halphen could only be liable to King under §1983 if plaintiff can show that Chief Halphen implemented a policy so deficient that the policy itself acted as a deprivation of constitutional rights. Cronn v. Buffington, 150 F.3d 538, 544 (5th Cir. 1998).

In City of Canton v. Harris, 489 U.S. 378, 109 S.Ct. 1197, 1205-06, 103 L.Ed.2d 412 (1989), the Supreme Court recognized that the inadequacy of police training may serve as the basis for a §1983 claim against a municipality through its policymaker "where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388, 109 S.Ct. at 1204. To establish a failure to train claim against Chief Halphen, King

8

must prove that "(1) the supervisor either failed to . . . train the subordinate official; (2) a causal link exists between the failure to train . . . and the violation of [King's] rights; and (3) the failure to train . . . amounts to deliberate indifference." Estate of Davis ex rel. McCully v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).

As to the third prong, the Fifth Circuit has defined deliberate indifference as "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Id. Thus, for Chief Halphen to be held liable as Officers Barclay and Swan's supervisor, King must establish at least a pattern of violations (fairly similar to what ultimately transpired) on the part of Officers Barclay and/or Swan so that the failure of Chief Halphen to respond with different training reflects a deliberate or conscious choice to endanger constitutional rights. See id. at 381-83; see also Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir.2005).

In opposition to defendants' motion, plaintiff comes forward with the affidavit of Cecil F. Carter of Scientific Investigations, Inc. ("Carter Aff.") who was hired by plaintiff "to investigate, determine and locate evidence of factual instances in which it was asserted that Bossier City Police had demonstrated and/or exhibited dangerous and/or vicious propensities and/or had exceeded their authority in dealing with members of the public by violating the civil rights of such persons." Carter Aff., ¶¶1, 2. Carter states that he is "aware of some such factual instances in which assertions of that nature had been made, and was able to locate others. . . ." Id. at ¶3. Carter lists eight separate lawsuits filed between 1999 and 2005 against, inter alia, the City of Bossier City, Chief Halphen and individually named officers on the Bossier City Police force. Aside from the fact that these lawsuits are hearsay and insufficient to defeat summary judgment, not one suit names as a defendant, or even mentions, Barclay or Swan or any of the other officers involved in King's arrest, though not named

9

as defendants in this matter. Thus, even if these lawsuits were proof of anything, which they are not, they certainly fail to show any pattern of violations by Barclay or Swan. See Estate of Davis, 406 F.3d at 382.

Further, even if Chief Halphen had subjective knowledge of Barclay and Swan's actions, King fails to support his claim that Halphen acted with deliberate indifference to his constitutional rights. Proof of a single instance of officer misconduct is ordinarily insufficient to give rise to an inference of the supervisor's deliberate indifference to training or supervision. Thompson v. Upshur County, Tex., 245 F.3d 447, 459 (5th Cir. 2001).

For the single incident exception to apply, the plaintiff must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation. See Brown v. Bryan County, 219 F.3d 450, 461 (5th Cir. 2000). The Fifth Circuit "has been highly reluctant to permit this exception to swallow the rule that forbids mere respondeat superior liability." Roberts, 397 F.3d at 295.

There is no evidence before this Court that Barclay or Swan has been involved in any cases involving the improper use of force or false arrest. The Court finds neither "unmistakable culpability" on the part of Chief Halphen nor "clearly connected causation" in this case; therefore, the single incident exception does not apply. Brown, 219 F.3d at 461.

Plaintiff has failed to meet his burden of proof on summary judgment as to his claims against Chief Halphen. Accordingly, plaintiff's claims against Chief Halphen are dismissed.

### III. Claims Against the City of Bossier City.

#### A. Municipal Liability Under §1983

Municipal liability under §1983 may not be based upon a theory of respondeat superior. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." Id. at 694, 98 S.Ct. at 2037-38. To establish a municipality's liability for a constitutional tort, the plaintiff must show first, that the municipality adopted a policy with "deliberate indifference" to its known or obvious consequences, and second, that the municipality was the "moving force" behind the constitutional violation. Id.

> Since Monell, the Fifth Circuit has defined "official policy" as:
>
> (1) A policy, statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipalities' law making officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> (2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

Nobby Lobby, Inc. v. City of Dallas, 970 F.2d 82, 92 (5th Cir. 1992). In Fraire, supra, the Fifth Circuit found that the plaintiffs failed to state facts to support the "bald assertions" made in their Complaint that the city's policies, or failure to implement policies, in any way violated the victim's constitutional rights. 951 F.2d at 1278

Plaintiff asserts that the City of Bossier City is liable under §1983 for failure to train or the inadequate training of its law enforcement officers. See Harris, supra. "[T]he inadequacy of police

11

training may serve as the factual basis for the §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>Harris</u>, 489 U.S. at 388-89, 109 S.Ct. at 1204-05.

> If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action-the "deliberate indifference"-necessary to trigger municipal liability.

<u>Bd. of County Com'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 407, 117 S.Ct. 1382, 1390, 137 L.Ed.2d 626 (1997).

Plaintiff asserts that the Bossier City Police Department ("BCPD") has "had numerous complaints and incidents concerning the unlawful arrests of citizens"; that "[t]here are *other* incidents in which an individual's federal rights have been violated by the [BCPD y]et nothing has been put in place to rectify the problem . . ."; that plaintiff "has been informed and is aware of *numerous* factual instances in which Bossier City Police officers have clearly demonstrated and/or exhibited dangerous and vicious propensities and/or have exceeded their authority . . . violated the civil rights of such persons, and demonstrated abuse of power and a callous or reckless indifference toward and disregard of such civil rights . . . ." Plaintiff's Opp., pp. 23-24 (emphasis added). Plaintiff further states that "[s]uch facts have been *alleged* and/or demonstrated in a variety of fact instances, situations and/or actions" citing, again, the affidavit of Cecil Carter. <u>Id.</u> (emphasis added).

As stated above, plaintiff has provided this Court no evidence to prove these conclusory allegations. The only evidence plaintiff offers to support these allegations are Complaints and Petitions filed against the City of Bossier City, Chief Halphen and individual officers, and an

unsworn letter from Robert Gatti, the father of one of the plaintiffs referenced by Carter, reporting his characterization of the criminal trial testimony as it relates to his son's, now dismissed, §1983 action. This evidence is not sufficient to defeat summary judgment.

Plaintiff provides this Court no support for his bald assertions regarding Barclay and Swan's alleged history of using excessive force or concerning the allegedly unconstitutional policies and customs of the City of Bossier City. Plaintiff has failed to come forward with specific facts sufficient to counter the City of Bossier City's contentions that its policies and customs were not constitutionally deficient. Therefore, plaintiff's §1983 claims against the City of Bossier City must also fail as a matter of law.

### B. State Law Claims

Plaintiff asserts that the City of Bossier City is vicariously liable for the actions of its employees, the named individual defendants. Because claims against Barclay and Swan are still viable, genuine issues of material fact exist as to whether the City of Bossier City is liable for damages caused by Barclay and Swan's actions. Thus, the City of Bossier City's motion based on its potential respondeat superior liability must be denied.

### CONCLUSION

For the reasons stated above, plaintiff's §1983 claims against Barclay and Swan based on a failure to provide Miranda warnings and inadequate medical care are dismissed; plaintiff's §1983 claims against Chief Halphen and the City of Bossier City are dismissed. Therefore, the only remaining claims are (1) plaintiff's §1983 excessive force and false arrest claims against Barclay and

Swan and plaintiff's related state law claims; and (2) plaintiff's state law claim against the City of Bossier City based on respondeat superior.

_/s/ Donald E. Walter_
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE
